IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ALLSTATE PROPERTY AND ) | |
| CASUALTY INSURANCE COMPANY ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-0534-CV-W-HFS |
| ) | |
| ) | |
| STEVEN A. McBEE AND | |
| KRISTI McBEE ) | |
|     Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the court is the motion of defendants, Steven A. McBee and Kristi McBee, for summary judgment. Also, before the court is the motion of plaintiff, Allstate Property and Casualty Insurance Company, for summary judgment. This action was commenced by Allstate with the filing of a complaint seeking a declaratory judgment that injuries sustained by the defendants constituted a single occurrence as defined by an insurance policy. This constitutes the sole dispute between the parties.

**Factural and Procedural Background**

Allstate issued a homeowner policy number 9 15 889324 06/28 "the Policy" to Christopher and Geraldine Ownbey "the insureds" for their residence in Buckner, Missouri. The relevant policy period was June 28, 2007, with no fixed date of expiration, and a premium period of June 28, 2007, to June 28, 2008. (Complaint: ¶ 10). The policy expressed a $100,000 "each occurrence" limit for

"Family Liability Protection," and a $1,000 "each person" limit for "Guest Medical Protection." (Id: ¶ 13). The insureds owned a dog and harbored him at their residence. (Id: ¶ 11). On September 17, 2007, the dog escaped the property and attacked the McBees as they jogged along the road adjacent to the insureds' residence; the dog was killed by Steven McBee. (Id: ¶ 14, 26). In December of 2007, the McBees commenced suit against the insureds in the Circuit Court of Jackson County, Missouri, Case No. 0176-CV37241, and alleged that the injuries they sustained were a result of the insureds' failure to keep the dog maintained on their property. (Id: ¶¶ 16- 17).[1]

On February 6, 2006, the McBees and Allstate entered into a Contract to Limit Recovery pursuant to section 537.065 R.S.Mo. and Settlement Agreement pursuant to section 537.060 R.S.Mo. "The Agreement." (Id: ¶ 29). The parties agreed that the McBees would dismiss their lawsuit without prejudice in consideration of payment by Allstate in the amount of $100,000 to the McBees on behalf of the insureds pursuant to Coverage X of the Policy. (Id: ¶ 30). Allstate also agreed to pay the McBees $2,000 on behalf of the insureds pursuant to Coverage Y of the Policy. (Id). The parties acknowledged the McBees' position that the attack constituted two occurrences, while Allstate's position was that it was one occurrence and the $100,000 limit of liability applied to the combined claims of the McBees. (Id: ¶ 31). The parties agreed that if a court of final review determined that the Policy provided only $100,000 in coverage then Allstate agreed to pay the McBees an additional $10,000. (Id: ¶ 32). If on the other hand, a court of final review determined that the Policy provided $200,000 in coverage then Allstate agreed to pay the McBees an additional $90,000. (Id).

Because there is a present and existing controversy between the parties, Allstate seeks

---

[1]Counts I and II of the Petition alleged strict liability by Steven McBee and Kristi McBee, respectively. (Complaint: Exh. B). Counts III and IV alleged negligence per se by Steven McBee and Kristi McBee, respectively. (Id).

resolution by this court and a declaration that the dog attack, as defined by the policy, was a single occurrence with an applicable $100,000 "each occurrence" limit for the claims of both the McBees. Allstate also requests a declaration that after payment of an additional $10,000 to the McBees, Allstate would have exhausted its obligations under the Policy and fully satisfied the terms of the Agreement.

## Analysis

Summary judgment is proper when there is no genuine issue of material facts, and the moving party is entitled to judgment as a matter of law. Haulers Ins. Co. v. Wyatt, 170 S.W.3d 541, 544 (Mo.App. S.D. 2005). A "material" fact is one which might affect the outcome of the case, and a "genuine" dispute exists if a reasonable jury could find for the nonmoving party. Indiana Lumbermens Ins. Co. v. PrimeWood, Inc., 1999 WL 33283343 * 2 (D.N.D. Jan. 8, 1999); quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence must be viewed "in the light most favorable to the nonmoving party." Primewood, at *2. The issue is whether the evidence submitted presents a sufficient disagreement as to the material facts so that submission to a jury is required, or whether it is so one-sided that one party must prevail as a matter of law. Id. Because this is a diversity action, state law governs issues of substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 78 (1938); see also, Nationwide Ins. Co. v. Central Missouri Elec. Co-op., Inc., 278 F.3d 742, 745 (8th Cir. 2001).

The terms of the Family Liability and Guest Medical Protection under Coverage X states in pertinent part:

**Losses We Cover Under Coverage X:**

Subject to the terms, conditions and limitations of this policy, we will pay the damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

Section II of the Policy states the Conditions:

**Our Limits of Liability:**

Regardless of the number of insured persons, injured persons, claims, claimants, or policies involved, our total liability under Coverage X - Family Liability Protection for damages resulting from one occurrence will not exceed the Limit of Liability shown on the Policy Declarations. All bodily injury and property damage resulting from continuous or repeated exposure to the same general conditions is considered the result of one occurrence. Our total liability under Coverage Y - Guest Medical Protection for bodily injury, to any one person, shall not exceed the "each person" Limit of Liability shown on the Policy Declarations.

**Definitions Used In This Policy**

7. **Occurrence** - means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

The McBees contend that the injuries sustained by each of them from the dog attack constitute two occurrences. While they concede that the circumstances at bar have not been considered under Missouri law as it relates to the interpretation of liability limitations, they claim that under a theory of either the "cause" approach, or the "effect" approach, Allstate is liable to pay for two occurrences. Both approaches were considered in <u>Kansas Fire and Casualty Company v. Koelling</u>, 729 S.W.2d 251 (Mo.App. E.D. 1987), where the insurer brought declaratory judgment and interpleader actions to determine the amount it owed to victims of an accident caused by the

insured. Id.[2] In an attempt to pass a car and return to its proper lane, the insured collided with a truck traveling in the opposite direction, and almost simultaneously hit the car it was trying to pass. Id., at 252. As a result of the accident, the insured died and serious injuries were sustained by the driver of the truck, the driver of the car, and a passenger in the car. Id. The insurer claimed that its obligation would be satisfied by paying its maximum liability for one accident, $100,000; while the victims claimed that there were two separate accidents. Id.

On appeal, the insurer requested that the term accident be interpreted under the "cause" approach. Under the "cause" approach, the insured's single act is considered the source from which all claims flow. The "effect" approach is considered where each claim resulting from an insured's act is considered a separate occurrence. Id., at 252. In considering the respective arguments, the court noted that the implication that there had to be more than one accident if two vehicles were hit by the insured's vehicle was refuted in the policy that limited the amount of recovery in one accident regardless of the number of claims or vehicles involved. Id. Ultimately, the court held that the "cause" approach more closely reflected the intentions of the parties who entered into the insurance contract, and in applying the "cause" approach, the court held that only one accident occurred. Id., at 253.

In support of their argument utilizing the "effects" approach, the McBees rely on Nationwide Ins. Co. v. Central Missouri Electric Cooperative, Inc., 278 F.3d 742, 747 (8th Cir. 2001). In Nationwide, the court was faced with the question of which underlying events triggered coverage under the terms of two respective policies. Nationwide, at 746. As such, the court had to determine whether the time of the occurrence of an accident should be defined as the time the

---

[2]The insurer appealed from an adverse ruling by the trial court in the prior declaratory judgment action. Koelling, at 251.

alleged wrongful act was committed or the time when the complaining party was actually damaged in order to determine whether injury occurred during the relevant policy period. Id. The court concluded that an "effects" analysis must be applied, and held that the policies in question were triggered by the occurrence of damages, not by the negligent acts. Id., at 746-47. However, the court recognized that Missouri may apply a simplified "cause" analysis to determine whether a single insurance policy covers a loss, "or to determine the coverage limits" or applicable deductibles under a given policy. Id., at 746-47 n. 3. Thus, the Nationwide case does not provide much support for the McBees' contention.

Similarly unavailing is the McBees' reliance on Shaver v. Insurance Co. of North America, 817 S.W.2d 654 (Mo.App. S.D. 1991), for there, the issue regarding the term of "occurrence" was whether or not the occurrence of bodily injury suffered by the plaintiff occurred during the policy period. Neither of these questions provide guidance for the dispute at bar. Consequently, the McBees' reliance on Nationwide, or Shaver under an "effects" analysis is inconclusive, for neither case lends support to their claim that the dog attacks constitute two occurrences for liability limitation purposes.

The McBees also cite Koikos v. Travelers Insurance Company, 849 So.2d 263 (Fla. 2003) in support of their contention that their injuries should be considered as two occurrences under the "cause" approach. In Koikos, two men were each hit by a bullet in two separate-but nearly concurrent rounds while standing in the lobby of a restaurant owned by the plaintiff . Koikos, at 265.[3] In the declaratory judgment proceedings, the parties filed cross-motions for summary

---

[3]The two shooting victims filed separate lawsuits in state court against the plaintiff claiming negligent failure to provide security. Koikos, at 265. The plaintiff then brought a declaratory action in state court against the defendant, Travelers Insurance Company, which in turn removed the case to the United States District Court for the Northern District of Florida. Id.

judgment, essentially asking the court to decide whether the failure to provide security constituted one occurrence, or whether it comprised two separate occurrences. Id. Travelers asserted that the injuries resulted from the plaintiff's alleged negligence which constituted a single occurrence. Id. The plaintiff argued that each shot injuring a victim was a separate occurrence. Id. The district judge reasoned that the claims at issue arose out of one basic event or series of events for which the plaintiff, as the insured, was liable, i.e. negligence in failing to provide adequate security for the victims. Id. Thus, the district court judge ruled that as a matter of law the underlying shooting incident constituted one occurrence. Id.

The plaintiff appealed the ruling to the Eleventh Circuit, which upon finding unanswered questions of state law, certified the question of law to the Supreme Court of Florida. Id, at 265-66.[4] Similar to the insurance policy at bar, the policy in Koikos defined "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Id, at 266; see also, Plaintiff's Motion for Summary Judgment: Exh. 1, pg.17). However, the term "accident" was not described in the policy, therefore the court concluded that when the term is susceptible to varying interpretations, it should be construed in favor of the insured. Koikos, at 266-67. The court also found that the inclusion of "continuous or repeated exposure" language did not restrict the definition of "occurrence," but rather, expanded it by including ongoing and slowly developing injuries such as those in the field of toxic torts. Id, at 268. The court found that the victims were not exposed to the negligent failure to provide adequate security; they were simply exposed to the bullets fired from the intruder's gun. Id.

---

[4]The Eleventh Circuit found it unclear what effect-if any-the insurance policy's definition of "occurrence" would have under Florida law. The Court also found it unclear whether in using the "cause theory," it should focus on the plaintiff's alleged negligence or on the separate gunshots. Id, at 265.

With these principles in mind, the court considered the proper determination as to the number of occurrences. This included whether Florida law embraced the "cause theory", and if so, whether the focus should be on the plaintiff's alleged negligence or the separate shootings. Id, at 269. The court noted that absent explicit policy language, most jurisdictions applied the "cause theory" which considered the cause of the injury, rather than the "effect theory" which looked at the number of injured plaintiffs. Id. In looking at the approach used by other districts, the court found that in cases where the insured is being sued for negligence, but the cause of the actual injury is from a third-party, the insured's alleged negligence was not the immediate cause of the injury, but merely the basis upon which the insured is being sued by the victim. Id, at 269-71. Thus, the court concluded that, consistent with the "cause theory," in the absence of clear language to the contrary, when the insured is being sued for negligent failure to provide security, "occurrence" is defined by the immediate injury-producing event and not by the underlying tortious omission. Id, at 272.

While the reasoning and conclusion of the court in Koikos has been carefully considered, I find the determination in Haulers Ins. Co., Inc. v. Wyatt, 170 S.W.3d 541 (Mo.App.S.D. 2005) to be more pertinent and persuasive. In the Haulers case, an automobile accident occurred between the Meyers and Rodger Wyatt, resulting in injuries to the Meyers who filed a personal injury suit against Wyatt as well as Wyatt Auto Sales. Haulers, at 542. The insurance company, Haulers Ins., had issued an insurance policy to Wyatt Auto Sales which included automobile liability insurance. Id, at 542-43. Haulers filed a declaratory action in which it sought a determination that its policy provided a single limit of $500,000 for the accident in satisfaction of both of the Meyers' claims. Id., at 544.

The trial court granted summary judgment in favor of Haulers and declared that there was a total of $500,000 coverage under the policy for the claims of both of the Meyers. Id.. Similar to

language used in the policy at bar, the policy in <u>Haulers</u> noted that, *inter alia*, all bodily injury "resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one 'accident.'" <u>Id</u>.

Here, the McBees claim that the term "occurrence" is ambiguous, and should, therefore, be construed in their favor. Specifically, when defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions ...., resulting in bodily injury or property damage." According to the McBees, this definition lends itself to misunderstanding in that a lay person might interpret it to mean that dog attacks against each person resulting in bodily injury constitutes an "occurrence." The McBees also claim that when the term "occurrence" - continuous or repeated exposure - is coupled with the explanation in Coverage Y which provides that "each person who sustains bodily injury is entitled to protection ......," a conflict occurs.

Whether an insurance policy is ambiguous is a question of law. <u>Haulers</u>, 170 S.W.2d, at 545. When in interpreting an insurance policy, "we give the language its plain meaning, which is the meaning that would ordinarily be understood by a layperson who bought the policy." <u>Haulers</u>, at 546; <u>quoting</u>, <u>Tapley v. Shelter Ins. Co.</u>, 91 S.W.3d 755, 757 (Mo.App. S.D. 2002). When there is "duplicity, indistinctness or uncertainty in the meaning of the words used in an insurance policy," there is an ambiguity. <u>Id</u>. Ambiguous provisions of an insurance policy are construed against the insurer; however, unambiguous policy language should not be distorted to create an ambiguity. <u>Haulers</u>, at 546. When interpreting the specific language at issue, the policy as a whole should be considered, and when construing an insurance policy, the language should be interpreted in a manner that is consistent with the reasonable expectations, objectives, and intent of the parties. <u>Id</u>.

Similar to the insurance policy in <u>Haulers</u>, the language of the policy at bar unambiguously limits liability coverage to $100,000 per occurrence, which by definition includes "continuous or

repeated exposure to substantially the same general harmful conditions ..." Moreover, the policy language at bar clearly provides, in describing the limits of insurance, that regardless of the number of injured persons, the damages resulting from one occurrence will not exceed the limit indicated on the declaration page, i.e. $100,000. Finally, the language clearly states that "All bodily injury and property damage resulting from continuous or repeated exposure to the same general conditions is considered the result of one occurrence." In keeping with the "cause" approach, as illustrated in Haulers and Koelling, the injuries sustained by each of the McBees, are the result of continuous exposure to substantially the same harmful condition, the failure to prevent the dog's escape, considered as a single incident. Under the causation approach I conclude there was one occurrence.

I acknowledge that prediction of the outcome, under Missouri law, is somewhat uncertain and debatable, which I suppose resulted in this litigation. In a dog bite case in Kansas, two occurrences were found, when a father and son were bitten by a dog that had escaped confinement. Hodgson v. Bremen Farmers' Mutual Ins. Co., 3 P.3d 1281 (Kan.App. 1999). That result was controlled by Kansas law, which follows the minority rule in relying on a resulting events test.

This year the Illinois Supreme Court found two occurrences when two boys died after becoming trapped in an excavation pit. Addison Insurance Co. v. Fay, 2009 WL 153859 (Ill.). Although stating that Illinois uses the causation theory the court seems to me to have moved toward use of an effects test.

The most impressive survey of the law I have uncovered also appears in a ruling this year, where a Federal District Judge rejected a "remote cause" analysis, and relied on what seems to be a results test. Evanston Ins. Co.v. Ghillie Suits.com, Inc., 2009 WL 734691 (N.D.Cal.). If plaintiffs here had relied on negligent harboring of a vicious dog, Evanston might have been persuasive. There was nothing arguably remote, however, in the theory that the insureds were negligent on the specific

recent occasion when they allowed the dog to escape.

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (ECF doc. 8) is DENIED. It is further

ORDERED that plaintiff's motion for summary judgment (ECF doc. 9) is GRANTED. The dog attack of the insureds' dog on defendants on September 17, 2007, is a single "occurrence" as defined in the Policy Number 9 15 889324 06/28 (with a $100,000 applicable "each occurrence" limit for the claims of both defendants), and after payment of an additional $10,000 to the defendants pursuant to the Settlement Agreement previously entered into between the parties, plaintiff has exhausted its obligations under the Policy and has fully satisfied the terms of the Settlement Agreement regarding defendants' claims.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

April  27 , 2009

Kansas City, Missouri